STATE of North Dakota, Plaintiff and Appellee,

v.

Raymond Charles MAYER III, Defendant and Appellant.

Cr. No. 981.

Supreme Court of North Dakota.

Oct. 23, 1984.

Robert G. Hoy, State's Atty., Fargo, for plaintiff and appellee.

Irvin B. Nodland, of Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Raymond C. Mayer III appealed from a judgment of conviction and a jury verdict finding him guilty of delivery of approximately four ounces of a controlled substance (marijuana) and possession with intent to deliver approximately 1,200 pounds of a controlled substance (marijuana). We affirm.

Mayer has raised the following issues:

"1. Whether the court below erred in denying the defendant's motion to dismiss the initial information as statutorily barred under sections 29–03–13 and 19–03.1–28, N.D.C.C.?

"2. Whether the court below denied defendant his constitutional rights to a fair trial, due process of law, and to present a defense by denying defendant's request for an instruction on jurisdictional entrapment and by denying defendant's request to reopen his case to present the testimony of a crucial defense witness?"

In early December 1981, a confidential informant told Charles Sauvageau, a Fargo Police Department investigator, that he knew of a person in Florida willing to sell marijuana "in this part of the country." On December 5, Sauvageau and Agent C. Daniel Smith of the North Dakota Drug

Enforcement Unit met with the informant, who told the officers that his cousin, Tim Smith, lived in Florida and could supply marijuana. The informant agreed to contact Tim Smith and tell him that he had two people who were interested in purchasing marijuana.

On December 8, Agent Smith received a telephone call from Tim Smith, who agreed to sell marijuana to Agent Smith. Agent Smith rejected Florida as the site for the transaction. They then discussed completing the transaction in Washington, D.C.

After Mayer telephoned Agent Smith on December 11 and said he was a friend of Tim Smith, Agent Smith negotiated with Mayer for the purchase of marijuana and had no further contact with Tim Smith.

Following further telephone conversations, arrangements were made for a sample of marijuana to be sent to Agent Smith on December 16. That evening, Agent Smith told Mayer that the sample had arrived. On December 17, Mayer arrived in Fargo for final negotiations. Mayer thereafter made arrangements for transporting the marijuana to Fargo by truck. Mayer returned to Fargo on December 28. The marijuana arrived on December 29 and both Mayer and the driver of the truck were arrested.

Counts 1 and 2 of a four-count Information charged Mayer with committing the offense of conspiracy to deliver a controlled substance in violation of §§ 12.1-06-04, 19-03.1-05, and 19-03.1-23, N.D.C.C. Count 3 charged Mayer with the offense of delivery of a controlled substance or possession of a controlled substance with intent to deliver in violation of §§ 19-03.1-05 and 19-03.1-23, N.D.C.C. Count 4 charged Mayer with the offense of delivery of a controlled substance in violation of §§ 19-03.1-05 and 19-03.1-23, N.D.C.C.

On June 17, 1982, Mayer entered a plea of guilty in Florida to a charge of conspiracy to possess, deliver, or sell in excess of 100 pounds of marijuana and was sentenced to a prison term of four years. The Florida conspiracy charge involved the marijuana seized in North Dakota.

The North Dakota conspiracy charges against Mayer were later dismissed. Mayer asserts that prosecution of the remaining offenses was barred by §§ 19-03.1-28 and 29-03-13, N.D.C.C., because of his previous Florida conspiracy conviction, and that the trial court erred in denying his motion to dismiss the substantive counts charged.

Section 19-03.1-28, N.D.C.C., provides:

"If a violation of this chapter is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state."

■ Conspiracy, an offense under § 12.-1-06-04, N.D.C.C., is not a violation of Chapter 19-03.1, N.D.C.C. Section 19-03.-1-28, N.D.C.C., does not bar prosecution in this State of one who has been convicted of a related conspiracy charge in another State. Section 19-03.1-28, N.D.C.C., is inapplicable to a charge of conspiracy.

Section 29-03-13, N.D.C.C., provides:

"When an act charged as a public offense is within the jurisdiction of another state, country, or territory as well as in this state, a conviction or acquittal thereof in the former is a bar to a prosecution or indictment therefor in this state."

■ Delivery of a controlled substance in violation of §§ 19-03.1-05 and 19-03.1-23, N.D.C.C., and possession of a controlled substance with intent to deliver in violation of §§ 19-03.1-05 and 19-03.1-23, N.D.C.C., are not acts "within the jurisdiction of another state." The delivery and possession occurred in North Dakota. Further, commission of a conspiracy is not the same act as delivery of, or possession with intent to deliver, a controlled substance. Conspiracy, which is distinct from the crime constituting the objective of the conspiracy, consists only of an agreement to engage in or cause conduct constituting an offense, together with an overt act, which need not itself be a crime, to effect an objective of

the conspiracy. Section 12.1–06–04, N.D. C.C.; *State v. Lind*, 322 N.W.2d 826 (N.D. 1982). The offenses in issue here require possession or delivery of a controlled substance.

To hold as Mayer urges would lead to the illogical result that one who conspires in North Dakota to deliver marijuana in North Dakota and does deliver in North Dakota could be convicted in North Dakota of both conspiracy and delivery, but one who conspires in another State to deliver marijuana in North Dakota and does deliver in North Dakota and is convicted of conspiracy in the other State could not be convicted of delivery in North Dakota. We do not construe § 29–03–13, N.D.C.C., to require such a result.

Relying on *Carbajal-Portillo v. United States*, 396 F.2d 944 (9th Cir.1968), *United States v. Rodriguez*, 585 F.2d 1234 (5th Cir.1978), *cert. denied, sub nom. Albernaz v. United States*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980) [overruled in part on other grounds, *United States v. Michelena-Orovio*, 719 F.2d 738 (5th Cir. 1983) ], and *State v. Mordecai*, 83 N.M. 208, 490 P.2d 466 (N.M.Ct.App.1971), Mayer next asserts that the trial court erred in refusing to give Mayer's requested instructions on jurisdictional entrapment.[1] He contends that:

"regardless of any intent to commit an offense against the laws of any other jurisdiction, he committed the offenses charged in North Dakota only as a result of improper inducement and coercion by North Dakota law enforcement officers and their agents."

He further contends that:

"proof that law enforcement officers induced defendant to possess with intent to deliver in North Dakota—as opposed to some other state—constitutes a form of entrapment within the meaning of the term."

■ Mayer indicated at trial that he did not originally intend to transact any business in North Dakota and expected to complete his part of the transaction in Washington, D.C., but was induced to complete the transaction in North Dakota by North Dakota law-enforcement officers. The object of the transaction, regardless of where Mayer was to complete his part, was the introduction of a substantial amount of marijuana into North Dakota.

We have examined the record and the decisions relied upon by Mayer and are not persuaded that the trial court erred in denying Mayer's requested instructions.

The defense of entrapment is provided by § 12.1–05–11:

"12.1–05–11. *Entrapment.*—1. It is an affirmative defense that the defendant was entrapped into committing the offense.

"2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as

---

**1.** Mayer requested the trial court to instruct the jury, among other things, as follows:

"Jurisdictional entrapment occurs when solely by the inducement of law enforcement officers a defendant is led to commit a crime in a jurisdiction where he would not have committed the crime but for such law enforcement officer inducement.

.    .    .    .    .

"Members of the jury you are instructed that whether or not Raymond Mayer was a law abiding citizen in other jurisdictions is not a question before you and has no bearing

upon your deliberations in this case. The question before you is whether law enforcement methods induced Raymond Mayer to violate laws of North Dakota as here charged, which he would not have violated but for such law enforcement inducement.

"Therefore, if you find that Raymond Mayer would not have violated the laws of North Dakota but for the inducement of law enforcement officials, then he is entitled to be acquitted of these charges regardless of whether or not he may have violated the laws of some other state or jurisdiction."

state agencies, and any person cooperating with such an agency."

Despite the trial court's refusal to instruct the jury as Mayer requested, Mayer was able to present his argument about his theory of jurisdictional entrapment to the jury.

The trial court instructed the jury in accordance with § 12.1–05–11.[2] We have previously upheld similar instructions. See *State v. Unterseher*, 289 N.W.2d 201 (N.D. 1980), and *State v. Folk*, 278 N.W.2d 410 (N.D.1979). Although the instructions given do not specifically refer to jurisdictional entrapment, they adequately stated the applicable law and Mayer was entitled to nothing more. As we noted in *State v. Dilger*, 338 N.W.2d 87, 96 (N.D.1983):

"The trial court is not required to give instructions in the specific language requested by the defendant. *State v. Skjonsby*, [319 N.W.2d 764 (N.D.1982)], *supra*. If the instructions given correctly advise the jury, there is no error, even though the requested instruction which was refused was a correct statement of the law. *Armstrong v. Miller*, 189 N.W.2d 688 (N.D.1971)."

Mayer's final assertion is that the trial court erred in denying his request to reopen his case to present the testimony of another witness. He has cited a number of decisions relating to a defendant's right under the Sixth and Fourteenth Amendments to the United States Constitution to present a defense by presenting witnesses to establish his defense or to impeach the credibility of prosecution witnesses. We deem those decisions to be inapposite. Mayer's contentions with regard to this matter are not of constitutional dimension.

■ Mayer was not in any manner denied his right to present a defense. He was denied his request to reopen his case after he had rested, which is a wholly different matter. Both the prosecution and the defense rested their cases on August 23, 1983. The next day, Mayer moved for a continuance to subpoena the confidential informant and to reopen his case to present his testimony. In denying the request, the trial court noted that the case started with an arrest on December 29, 1981; Mayer had at all times been represented by counsel; both sides knew the case was going to be tried on August 15, 1983; the trial was then in its eighth day; and that Mayer "has always known or could have known where [the informant] worked and where he lived." The informant lived in Barnesville, Minnesota, and worked in Fargo.

■ The decision as to whether or not to allow a party to reopen his case is a matter that lies within the trial court's discretion. *State v. Otto*, 245 N.W.2d 885 (N.D.1976); §§ 29–21–01 and 29–21–02, N.D.C.C. We cannot conclude that the trial court abused

---

2. The trial court instructed the jury as follows:

"Entrapment: The Defendant asserts that he was the victim of entrapment as to the offenses charged in the Information. The law of North Dakota provides that entrapment is an affirmative defense to the commission of a crime.

"Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense.

"Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"Thus, under North Dakota law, entrapment exists when both of the following two elements occur:

"1. A law enforcement agent induces the commission of the crime; and

"2. The method by which the law enforcement agent induces the commission of the crime is a method likely to cause normally law-abiding persons to commit the crime.

"You are further instructed that law enforcement agents for this purpose includes personnel of federal, state, county, city and local law enforcement agencies, and any person cooperating with such agencies.

.      .      .      .      .

"If the Defendant has proved the affirmative defense of entrapment on any one or both of said Counts of the Information, you should return a verdict of 'not guilty' to such Count or Counts.

"The fact that the Defendant may not prove the defense of entrapment does not alter the burden of the State as hereinbefore instructed of proving all of the essential elements beyond a reasonable doubt before you can find the Defendant guilty of the crime."

its discretion in denying Mayer's request to reopen.

For the reasons stated, the judgment and verdict are affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.